UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
HANOVER SPECIALTIES, INC. D/B/A
VITRITURF,

                Plaintiff,             **MEMORANDUM & ORDER**
                                        19-CV-3732 (KAM)(CLP)

      -against-

LES REVÊTEMENTS POLYVAL INC.
D/B/A POLYVAL COATINGS INC.,

                Defendant.
----------------------------------X
KIYO A. MATSUMOTO, United States District Judge:

        Plaintiff Hanover Specialties Inc. d/b/a Vitrituf

("Hanover"), commenced this action against defendant Les

Revêtements Polyval Inc. d/b/a Polyval Coatings Inc.

("Polyval"), alleging that defendant: breached a contract to

provide plaintiff polyurethane binder used in plaintiff's

business operations, damaged plaintiff's reputation, breached an

implied warranty of merchantability, and was unjustly enriched.

(ECF No. 1, Complaint ("Compl.") at 4-8.)

        Presently before the Court is defendant's motion to

dismiss plaintiff's complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6). (*See* ECF No. 22, Notice of Motion to

Dismiss; ECF No. 22-1, Defendant's Memorandum of Law in Support

of the Motion to Dismiss ("Def. Mem."); ECF No. 23, Defendant's

Reply Memorandum ("Def. Reply Mem.").) For the reasons set

forth below, defendant's motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

The following facts -- drawn from the complaint and documents that are incorporated by reference in, or integral to, the complaint -- are assumed to be true for purposes of this motion. *See, e.g.*, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Furthermore, in evaluating the res judicata effect of a prior action, "courts routinely take judicial notice of documents filed in other courts, [] not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.,* 937 F.2d 767, 774 (2d Cir. 1991); *see Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 n.3 (2d Cir. 2000) (taking judicial notice of a final judgment and notice of appeal entered by a California state court).

## I.  Factual Background

Defendant Polyval is a Canadian corporation in the business of manufacturing high-performance industrial strength protective coatings. (Compl. ¶¶ 3, 7.)

Plaintiff Hanover is a New York corporation with its corporate headquarters and principal place of business in New York, New York. (*Id.* ¶ 2.) Hanover is in the business of installing "Poured in Place Safety Surfacing," which is a

cushioned flooring used for playgrounds and other physical spaces across the country.  (*Id.* ¶ 7.)  Hanover utilizes the polyurethane "binder," offered by Polyval to create the rubber layer of the cushioned surfaces.  (*Id.*)

From 2015 to 2018, Hanover purchased from Polyval large shipments of a polyurethane binder for use in installing cushioned, seamless flooring surfaces in playgrounds in multiple states, including New York and Texas.  (*Id.* ¶ 8.)  Hanover relied on Polyval and its chemists to provide a suitable binder for Hanover's installation at playgrounds and other sites across the country.  (*Id.* ¶ 10.)  On several unspecified occasions, Hanover determined that there were viscosity issues with Polyval's binder and also discovered instances where Hanover's "poured in place surfacing was lifting off the ground."  (*Id.* ¶¶ 11-12.)  Hanover allegedly conducted in-house testing on Polyval's binder and determined that the binder was not suitable for use in pour in place safety surfacing due to a latent defect the binder created.  (*Id.* ¶ 14.)  Hanover anticipates that this latent defect will be discovered in numerous installations Hanover has already completed leading to millions of dollars in costs of repair and damages.  (*Id.* ¶ 16.)

**A. The Texas Action**

Due to the ongoing dispute between Hanover and Polyval over the binder, Hanover ceased paying Polyval's invoices, which

led to billing dispute.  On February 14, 2019, Polyval assigned its right, title, and interest in a debt in the amount of $541,107, arising from Hanover's unpaid invoices due to Polyval to Export Development Canada ("EDC").  (ECF No. 22-2, Declaration of Bradley Nash ("Nash Decl."), Ex. A, Complaint in Texas Action ("Compl. Texas Action"), ¶¶ 10, 12.)  On March 18, 2019, EDC, as Polyval's assignee, filed suit against Hanover in the United States District Court for the Eastern District of Texas, *Export Development Canada v. Hanover Specialties*, No. 19-cv-207 (E.D. Tex.) (the "Texas Action"), seeking to collect $541,107.00 for the thirteen unpaid invoices, plus interest and attorneys' fees.  (*See* Compl. Texas Action.)  Specifically, EDC sought to recover payments for thirteen invoices for material provided to Hanover by Polyval between August 2, 2018 and November 30, 2018 (the "thirteen invoices").  (*Id.* ¶ 10.) Despite sending written demands to Hanover, Polyval was unable to collect the unpaid amounts and $541,107.00 remained outstanding on the thirteen invoices.  (*Id.* ¶ 11.)

On May 28, 2019, Hanover filed an answer to EDC's complaint, asserting setoff as a sixth affirmative defense to EDC's claim for damages and noting that "[t]o the extent plaintiff has sustained any damages, which is denied, such damages were caused in whole or in part by plaintiff's conduct or that of its agents, representatives and not Hanover."  (ECF

No. 22-4, Nash Dec., Ex. B, Answer in Texas Action, at 4-5.)
Specifically, Hanover asserted that Polyval had breached an
"implied warranty of merchantability" because its "binder" was
allegedly "defectively manufactured and was not adequate for use
for the surfacing installed by Hanover," resulting in a loss "of
over $200,000 and rising."  (*Id.*)

One month later, on June 26, 2019, Hanover filed the
instant New York action against Polyval, asserting claims,
arising during an unspecified period of time, for breach of
contract (Count 1), damage to Hanover's reputation (Count 2),
breach of the implied warranty of merchantability (Counts 3 and
4), and unjust enrichment (Count 5), which was similar to the
sixth affirmative defense Hanover raised in the Texas Action as
to the thirteen invoices.  (*See* ECF No. 1.)

On August 13, 2019, in the Texas Action, Hanover filed
a motion to transfer the Texas Action from the Eastern District
of Texas to this Court.  (Nash Decl., Ex. C, Texas Action Docket
No. 19-cv-207 ("Texas Action Docket"), ECF No. 20.)  Hanover
argued in that motion that the New York action "is based on the
same facts and circumstances that will arise for all defenses in
[the Texas Action]."  (Nash Decl., Ex. D, Hanover's Motion to
Change Venue, at 1-2; 8-11.)  The Texas Action proceeded to
discovery.  (*See* Nash Decl. Ex. C., Texas Action Docket, ECF

Nos. 16, 36, 38-46.)  The motion to transfer venue was never
adjudicated in the Texas Action.

On February 26, 2020, the parties to the Texas Action
presented a joint motion for entry of judgment under Federal
Rule of Civil Procedure 54(b) in the form of an Agreed Final
Judgment.  (Nash Decl., Ex. I, Agreed Final Judgment in Texas
Action (the "Agreed Final Judgment").)  In the Agreed Final
Judgment, the court considered the parties' agreement and
ordered that "judgment should be . . . entered in favor of [EDC]
against [Hanover]."  (*Id.* at 1.)  The Agreed Final Judgment
provided that "based on the agreement of the parties, . . .
[EDC's] claims and [Hanover's] defenses, including any
affirmative defenses, related and encompass only materials
supplied by [Polyval] to [Hanover] referenced in" the thirteen
invoices "issued between August 2, 2018, and November 30, 2018."
(*Id.*)  The Agreed Final Judgment also ordered that Hanover's
defenses "relate to and encompass only" the thirteen listed
invoices issued between August 2, 2018 and November 30, 2018.
(*Id.* at 3.)  The Agreed Final Judgment further stated that any
invoices "other than the invoices and materials [specified in
the agreement] are the subject of separate unrelated
transactions, occurrences, and agreements outside the scope of
this lawsuit, and were not the basis in this lawsuit of any
claim or defense, including affirmative defenses."  (*Id.*)  The

parties agreed that EDC "is entitled to judgment against
[Hanover] in the principal amount of $541,107.00," the amount
sought in the Texas Action, plus pre- and post-judgment interest
and attorneys' fees.  (*Id.* at 2.)  The Texas district court
entered the Agreed Final Judgment on February 28, 2020.  (Texas
Action Docket, ECF No. 60.)

## II.   Procedural Background

On June 26, 2019, while the Texas Action was pending,
plaintiff commenced the instant action seeking monetary damages,
attorney's fees, and costs.  (*See* ECF No. 1.)  On December 26,
2019, defendant filed a pre-motion letter requesting leave to
file an anticipated motion to dismiss plaintiff's complaint for
failure to effect timely service under Federal Rule of Civil
Procedure 4(m), to stay or dismiss this action in favor of an
earlier filed action raising similar issues, and for a partial
motion to dismiss plaintiff's complaint for failure to state a
claim upon which relief could be granted.  (ECF No. 10.)
Plaintiff opposed defendant's request for a pre-motion
conference.  (ECF No. 13.)  On February 26, 2020, the court set
a briefing schedule for defendant's partial motion to dismiss.
(*See* Scheduling Order 2/26/2020.)  After several extension
requests, the defendant's partial motion to dismiss was fully
briefed on July 10, 2020.  (*See* ECF Nos. 22-25.)

Presently before the Court is defendant's partial motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (*See* ECF No. 22.)  Specifically, defendant moves to dismiss plaintiff's complaint on the grounds that (1) the instant suit is duplicative of the Texas Action and thus barred under the doctrine of res judicata; (2) plaintiff's damage to reputation claim fails as a matter of law under New York's economic loss rule; and (3) plaintiff's unjust enrichment claim is duplicative of its breach of contract claim.  (Def. Mem. at 2-3.)

## LEGAL STANDARD

In evaluating defendant's motion to dismiss, the Court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in plaintiff's favor.  *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).  A claim survives a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  A plaintiff must show "more than a sheer possibility that

a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.  If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed."  *Id.* at 570.

District courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider documents the plaintiff relied on in bringing suit, and which are either in the plaintiff's possession, or that the plaintiff knew of when bringing suit. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992); *McKevitt v. Mueller*, 689 F. Supp. 2d 661, 665 (S.D.N.Y. 2010).

"Res judicata challenges may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Thompson v. Cty. of Franklin,* 15 F.3d 245, 253 (2d Cir.1994).  Dismissal on res judicata grounds is appropriate if "it is clear from the face of the complaint, and matters of

which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l,* 231 F.3d 82, 86 (2d Cir. 2000).

## DISCUSSION

Plaintiff seeks relief for defendant's alleged breach of contract, damage to plaintiff's reputation, and unjust enrichment in violation of New York state law.  Defendant moves for complete dismissal plaintiff's complaint under the doctrine of res judicata and partial dismissal of plaintiff's damage to reputation and unjust enrichment claims for failing to state a claim under Federal Rules of Civil Procedure 12(b)(6).  For the reasons set forth below, the court grants in part and denies in part defendant's motion to dismiss.

## I.   The Preclusive Effect of the Texas Action

Defendant argues that the judgment entered by the Eastern District of Texas should have preclusive effect in this action and requires complete dismissal of plaintiff's complaint. (Def. Mem. at 12-21.)  Plaintiff argues that the Texas Action does not preclude the instant suit because plaintiff's affirmative defense in the Texas Action was not a compulsory counterclaim, Polyval was not an opposing party against whom a counterclaim could be brought, and the thirteen invoices subject to EDC's claim do not arise out of the same "transaction or occurrence" as the New York action.  (Pl. Mem. at 6-17.)

## A. Applicable Law

Federal courts "apply federal law in determining the preclusive effect of a federal judgment." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). The Second Circuit has explained that "[u]nder federal common law, the question of whose law governs the preclusive effect of a prior federal judgment turns on the basis for jurisdiction in that prior case, without regard to the basis for jurisdiction in a later case applying it." *Stinnett v. Delta Air Lines, Inc.*, 803 F. App'x 505, 508 n.3 (2d Cir. 2020) (summary order). The "preclusive effect of a judgment rendered by a federal court sitting in diversity is determined by the law of the state in which the rendering court sat." *Id.* (citing *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)); *see also Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, No. 20-118, 2021 WL 683831, at *5 (2d Cir. Feb. 23, 2021) ("[F]ederal diversity judgments should be accorded the same preclusive effect that would be applied by state courts in the state in which the federal diversity court sits." (citing *Semtek Int'l Inc.*, 531 U.S. at 507–08)). Here, the Texas Action in which the prior federal judgment was entered was before the Eastern District of Texas federal district court based on the parties' diversity of citizenship. (Texas Action Docket, ECF No. 1, Complaint ("Texas Compl.") ¶ 4.) Accordingly, this court will

apply Texas law governing preclusion because the Eastern
District of Texas sits in the state of Texas.

Under Texas law, res judicata "requires proof of the
following elements: (1) a prior final judgment on the merits by
a court of competent jurisdiction; (2) identity of parties or
those in privity with them; and (3) a second action based on the
same claims as were raised or could have been raised in the
first action." *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 652
(Tex. 1996). Texas follows a transactional approach to res
judicata. *See Barr v. Resolution Tr. Corp.*, 837 S.W.2d 627, 631
(Tex. 1992). Under the transactional approach, res judicata
precludes not only claims that were raised in an earlier
litigation "'but also . . . causes of action or defenses which
arise out of the same subject matter and which might have been
litigated in the first suit.'" *Getty Oil Co. v. Ins. Co. of N.
Am.,* 845 S.W.2d 794, 798 (Tex. 1993) (quoting *Barr,* 837 S.W.2d
at 630).

### B. Application

The court now turns to each of the requirements for
application of res judicata and concludes, as set forth below,
that res judicata does not bar the instant New York action.

### i. Prior Final Judgment on the Merits

Pursuant to Federal Rule of Civil Procedure 54(b), the
parties moved the Eastern District of Texas for an entry of

judgment on February 26, 2020.  (Texas Action Docket, ECF No. 59.)  On February 28, 2020, the Eastern District of Texas entered an Agreed Final Judgment, disposing "of all parties and all claims."  (ECF No. 60.)  Generally, "[a]n agreed order or judgment of dismissal in settlement of a controversy is a judgment on the merits."  *Jistel v. Tiffany Trail Owners Ass'n, Inc.,* 215 S.W.3d 474, 480 (Tex. App. 2006).  Under these circumstances, this court concludes that the Agreed Final Judgment in the Texas Action constituted a prior final judgment on the merits of the claim for payment of thirteen invoices by a court of competent jurisdiction.  (*See* Agreed Final Judgment at 4 ("It is further ORDERED this Judgment is FINAL and appealable. This Final Judgment disposes of all parties and all claims."); *see also Paradise Living, Inc. v. Blackburne & Brown Mortg. Fund I*, No. 01-18-00194-CV, 2019 WL 2426168, at *4 (Tex. App. June 11, 2019) (concluding that an "agreed final judgment" settling the parties' claims constituted a "final prior judgment" under Texas law).

### ii. Identity of Parties or Those in Privity with Them

"'[T]he identity of parties [element] requires that both parties to the current litigation be parties to the prior litigation or in privity with parties to the prior litigation.'" *United States ex rel. Laird v. Lockheed Martin Eng'g and Sci. Serv. Co.,* 336 F.3d 346, 357 (5th Cir. 2003) (applying Texas

law) (second alteration in original) (quoting *Jones v. Sheehan, Young & Culp, P .C.,* 82 F.3d 1334, 1341 (5th Cir. 1996)), *abrogated on other grounds by Rockwell Int'l v. United States*, 549 U.S. 457, 472, (2007); *see also Getty Oil,* 845 S.W.2d at 800 (stating that "[u]nder Texas law, a former judgment bars a second suit against all who were in 'privity' with the parties to the first suit").  The Supreme Court of Texas has explained that "privity" cannot be defined precisely but instead depends on "the circumstances of each case."  *Getty Oil*, 845 S.W.2d at 800.  Under Texas law, an assignor-assignee relationship can constitute privity for res judicata purposes.  *See Gwinn v. Midland Credit Mgmt., Inc.*, No. 17-cv-74, 2019 WL 7759521, at *4 (W.D. Tex. Sept. 16, 2019) (applying Texas law) (concluding that privity existed under Texas law for res judicata to apply where parties were in an assignor-assignee relationship).

Here, the relationship of the parties in the present action to those in the prior Texas action is sufficient to meet the identity of parties requirement with regard to the thirteen invoices in dispute.  It is undisputed that on or around February 14, 2019, Polyval assigned to EDC all right, title, and interest in Hanover's debt in the amount of $541,107, arising from the thirteen outstanding invoices.  (*See* Pl. Mem. at 1; Compl. Texas Action ¶ 12.)  Accordingly, because Polyval and EDC entered into an assignor-assignee relationship, the parties were

14

in privity during the Texas Action, with respect to the thirteen invoices in dispute.  Thus, for purposes of res judicata, the court concludes that the identity of the parties (Polyval and EDC) were the same due to the legal relationship establishing privity.  Indeed, by receiving the assignment of Hanover's debt in the amount of Polyval's thirteen invoices, EDC stood in the shoes of Polyval and exercised Polyval's rights when it initiated the Texas Action to recover the outstanding payments owed by Hanover as to the thirteen invoices.  *See First-Citizens Bank & Tr. Co. v. Greater Austin Area Telecomms. Network*, 318 S.W.3d 560, 566 (Tex. App. 2010) (reasoning that an assignment may create privity because "an assignee stands in the shoes of the assignor and may assert those rights that the assignor could assert, including bringing suit").  For these reasons, the court concludes that the second element of res judicata is also met here because there was privity between Polyval and EDC as to the thirteen invoices in dispute in the Texas Action.[1]

---

[1]     The court rejects plaintiff's argument that Polyval was not an "opposing party" in the Texas Action because res judicata does not require an identical opposing party in the first suit.  Instead, as discussed above, based on the assignment by Polyval to EDC, under Texas law, res judicata may apply when the party in the second suit is in "privity" with the party to the first suit.  Polyval and EDC were in privity in the Texas suit as to the thirteen invoices.  *See Amstadt*, 919 S.W.2d at 652; *see also Montes v. Overhead Corp.*, No. 19-cv-32, 2019 WL 6792545, at *4 (S.D. Tex. Sept. 6, 2019) (applying Texas law) ("[T]he parties need not be completely identical for res judicata to apply"), *report and recommendation adopted*, No. 19-cv-32, 2019 WL 6790516 (S.D. Tex. Dec. 12, 2019).

### iii.  Identity of Claims Between First and Second Suits

Polyval argues that claims are the same in both actions because they arise from the same transaction involving the sale of Polyval's binder.  (Def. Mem. at 15-18.)  In response, Hanover argues that because Polyval was not a party in the Texas Action, any claims against Polyval could not be compulsory.  (Pl. Mem. at 7-8.)  Specifically, plaintiff argues that Polyal was not an opposing party in the Texas Action and Hanover could not obtain full relief against EDC in the Texas Action.  (Pl. Mem. at 12-14.)  Finally, plaintiff argues that Hanover's and Polyval's transactions do not arise from the same transactions or occurrences as the thirteen invoices in dispute in the Texas Action.  (Pl. Mem. at 14-17.)

For res judicata to apply, the second action must be based on the same claims as were raised, or could have been raised, in the first action.  Under this standard, a claim that would have been a compulsory counterclaim in the first action is precluded from being brought in a second action.  *State & County Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001) ("Texas follows the transactional approach to res judicata. This approach mandates that a defendant bring as a counterclaim any claim arising out of the transaction or occurrence that is the subject matter of the opposing party's suit." (internal citations omitted)); *Ingersoll-Rand Co. v. Valero Energy Corp.*,

997 S.W.2d 203, 207 (Tex. 1999) (res judicata bars asserting in a second action claims that would have been compulsory counterclaims in an earlier action).  Under Texas law, a potential counterclaim is compulsory if: (1) it is within the jurisdiction of the court; (2) it is not at the time of filing the answer the subject of a pending action; (3) the claim is mature and owned by the defendant at the time of filing the answer; (4) it arose out of the same transaction or occurrence that is the subject of the opposing party's claim; (5) it is against an opposing party in the same capacity; and (6) it does not require the presence of third parties over whom the court cannot acquire jurisdiction.  *Ingersoll-Rand Co.*, 997 S.W.2d at 207; *see also* Tex. R. Civ. Proc. 97(a), (d).

        In this case, Hanover argues that it is not precluded from litigating its claims in New York because the damages sought in this court do not "arise out of the same transaction or occurrence" as the thirteen invoices in dispute in the Texas Action.  (Pl. Mem. at 14-17.)  Specifically, Hanover argues that its claims in the Texas Action were not "compulsory" because they did not involve the same transaction or occurrence as those in the Texas Action.  (*Id.* at 7-8.)  "To determine what constitutes a transaction or occurrence, Texas courts employ a 'logical relationship' test which focuses on whether the essential facts on which claims are based are significantly and

17

logically relevant to both claims." *Rainwater v. 21st Mortg. Corp.*, No. 09-cv-331, 2010 WL 1330624, at *7 (E.D. Tex. Feb. 25, 2010) (citing *Freeman v. Cherokee Water Co.*, 11 S.W.3d 480, 483 (Tex. App. 2000)), *report and recommendation adopted*, No. 09-cv-331, 2010 WL 1328845 (E.D. Tex. Mar. 29, 2010); *SMS Mktg. & Telecomms., Inc. v. H.G. Telecom, Inc.*, 949 F. Supp. 134, 139 (E.D.N.Y. 1996) ("In Texas, the test for determining whether a claim is a compulsory counterclaim is the 'logical relationship' test."). To determine what claims are precluded by an earlier judgment, the court must compare "the factual matters that make up the gist of the complaint" in each claim. *Barr v. Resol. Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 630 (Tex. 1992).

Here, in comparing the factual matters in the complaints in both cases, the court concludes that Hanover's claims in the instant action do not arise from the "same transaction or occurrence" as the thirteen invoices in dispute in the Texas Action. Specifically, in the Texas Action, EDC, Polyval's assignee, chose to initiate an action for non-payment of thirteen specific invoices owed by Hanover. (*See* Texas Compl. ¶ 10 ("Hanover failed to pay for the Materials pursuant to *certain invoices* provided to Hanover" as outlined in the complaint) (emphasis added).) In seeking payment for these thirteen invoices, EDC sought a principal amount of $541,107.00

plus interest and attorneys' fees.  (*Id.* ¶¶ 12.)  Indeed, the
assignment agreement between Polyval and EDC confirms that the
scope of the assignment to EDC was narrowly limited to the
recovery of a debt in the amount of $541,107.00.  (ECF No. 23-5,
Declaration by Michael Taubenfeld, Ex. 3, EDC Portfolio Credit
Insurance.)[2]

In contrast, in the New York action, Hanover seeks a
broader range of damages for different alleged conduct by
Polyval than what EDC sought in the Texas Action.  In
particular, Hanover seeks damages for the allegedly defective
binder provided by Polyval, which resulted in economic losses
potentially extending into the millions of dollars.  (Compl. ¶¶
16, 21.)  Hanover alleges that the binder provided by Polyval
contained a "latent defect," which was allegedly discovered
years after installation had occurred.  (*Id.* ¶¶ 14, 18, 34.)
Although the allegation of a latent defect is similar to the
affirmative defense raised by Hanover in the Texas Action (*see*
Nash Decl., Ex. B at 4-5), the key distinction is that the
affirmative defense of setoff raised by Hanover was limited to
rebutting Hanover's potential liability under EDC's breach of
contract claim based on the thirteen invoices.  In other words,
Hanover's setoff defense was limited to extinguishing whatever

---

[2]    This court may properly consider the assignment agreement because the
agreement was integral to the Texas complaint.

debt was owed by Hanover to EDC in the Texas Action for the
enumerated thirteen invoices upon which EDC sued. *See CPS
Int'l, Inc. v. Harris & Westmoreland*, 784 S.W.2d 538, 544 (Tex.
App. 1990) ("A setoff brings together the obligations of
opposing parties to each other and, by judicial action of the
court, makes each obligation extinguish the other.  The object
of a setoff is to adjust the indebtedness between the parties
and allow recovery of only the balance that is due.").  Thus,
unlike the claims set forth by Hanover in the New York suit,
which seek an expansive recovery beyond a setoff for thirteen
invoices for Polyval's allegedly defective product, the
affirmative defense in the Texas Action was limited in scope
and, accordingly, contrary to Polyval's argument, was not the
same as the claims in dispute here.  (*See* Nash Decl., Ex. B at
4-5 ("*To the extent plaintiff has sustained any damages*, which
is denied, such damages were caused in whole or in part by
plaintiff's conduct or that of its agents, representatives and
not Hanover . . . ." (emphasis added).)  Accordingly, because
the setoff defense in the Texas Action was limited to rebutting
EDC's breach of contract claim and was narrow in scope, the
extent of relief sought in the Texas Action was not identical to
the broad scope of relief sought in the New York suit.

     Moreover, the temporal scope of each suit also
distinguishes the present claims from those at issue in the

Texas Action.  According to the complaint filed in Texas, Hanover and Polyval began their commercial relationship in or around 2015.  (Texas Compl. ¶ 7.)  The thirteen invoices in dispute in the Texas Action only involve transactions taking place between August 2018 and November 2018.  (*Id.* ¶ 10.)  Thus, for the purposes of the nonpayment claim, the Texas court and the parties in that action only litigated Hanover's alleged nonpayment of specific invoices from August 2018 and November 2018.  In contrast, in the New York action, Hanover alleges that its business relationship with Polyval began in or around 2015, and that Hanover expressed concern over the years that Polyval's binder was not suitable for use and suffered damages.  (Compl. ¶¶ 8-16.)  Thus, although not expressly defining a time range, Hanover's New York complaint alleges damages arising from any hidden defects in products supplied by Polyval since the inception of the business relationship in 2015.  Accordingly, unlike the Texas Action, which focuses on thirteen invoices issued between August 2018 and November 2018, the New York action encompasses a broader period of time and different factual and legal issues.  *See Weaver v. Texas Cap. Bank N.A.*, 660 F.3d 900, 907 (5th Cir. 2011) (applying Texas law) ("To decide whether the two lawsuits arose out of the same transaction or occurrence, several factors are considered together, including 'their relatedness in time, space, origin,

or motivation, and whether, taken together, they form a convenient unit for trial purposes.'" (quoting *Getty Oil Co.*, 845 S.W.2d at 799)).

To be sure, Texas law also confirms that the claims in dispute here did not arise from the "same transaction or occurrence" as the thirteen invoices in dispute in the Texas Action.  For example, in *Texas Beef Cattle Co. v. Green*, the Texas Court of Appeals held that that two transactions to purchase cattle between the same parties were not the same transaction and therefore a judgment regarding one group of cattle did not preclude claims regarding the other group.  860 S.W.2d 722, 724 (Tex. App. 1993).  There, the court noted that "[e]ven though the two separate transactions involved essentially the same parties and subject matter (*i.e.*, cattle), these transactions are separate and distinct, because they are based on separate and distinct actions of the parties."  *Id.* Defendant criticizes the "scant justification" of the case and notes that cattle have different characteristics.  (Def. Reply. Mem. at 6.)  Defendant, however, offers no basis for its claim that it sold "identical" product over the course of its dealing with plaintiff.  Discovery may disclose whether and what "hidden defects" existed in the various batches of product sold by defendant to plaintiff over the years of their contractual relationship.

Here, the court concludes that the thirteen invoices in dispute in the Texas Action were "separate and distinct" from the transaction at issue in the New York suit, which specifically addresses Polyval's purported breach of warranty and breach of contract by providing defective products. (*See* Compl. ¶¶ 17-21; 29-46.)  Thus, unlike the Texas Action, which focused on Hanover's actions (or inaction) in failing to pay the thirteen invoices, the New York action focuses on Polyval's actions in breaching a contract or warranty by providing defective binder to Hanover.  Thus, the factual and legal bases for the claims in each suit are not identical and, accordingly, do not arise from the "same transaction or occurrence" because the suits are "based on separate and distinct actions of the parties."  *Texas Beef Cattle Co.*, 860 S.W.2d at 724; *see also Karle v. Innovative Direct Media Co.*, 309 S.W.3d 762, 766-67 (Tex. App. 2010) (declining to apply res judicata where the two suits involved different facts and sought different forms of relief).

Finally, turning to the terms of the final judgment in the Texas Action, the court notes that its sister federal court in the Eastern District of Texas decreed that the invoices in the Texas Action were separate and unrelated from any other invoices issued by Polyval to Hanover.  *See* Fed. R. Civ. P. 54(a) (A judgment "includes a decree and any order from which an

appeal lies"). The final judgment in the Texas Action, which was jointly stipulated to by EDC (Polyval's assignee) and Hanover, expressly states that:

> [A]ny invoices issued by Les Revetements Polyval Inc. to Defendant Hanover Specialties, Inc. d/b/a Vitriturf, or any materials provided by Les Revetements Polyval Inc. to Defendant Hanover Specialties, Inc. d/b/a Vitriturf, other than the invoices and materials referenced in the chart above, are the subject of separate unrelated transactions, occurrences, and agreements outside the scope of this lawsuit, and were not the basis in this lawsuit of any claim or defense, including affirmative defenses.

(Agreed Final Judgment at 3.) To be clear, the Agreed Final Judgment also included a chart of the thirteen invoices comprising the debt assigned to EDC by Polyval that were in dispute, which directly corresponds with a chart of the invoices originally identified in the complaint in the Texas Action. (*Compare* Agreed Final Judgment at 3, *with* Texas Compl. ¶ 10.) The district court in the Eastern District of Texas signed the parties' Agreed Final Judgment, which was entered on February 28, 2020. (Texas Action Docket, ECF No. 60.) Thus, based on the parties' representations and the record before it, the district court in Texas judicially decreed that the judgment in Texas involved invoices distinct and unrelated from any other invoices in dispute between Polyval and Hanover. (*See* Agreed Final Judgment at 3.) Having reviewed the express terms of the

Agreed Final Judgment in the Texas Action and for the reasons set forth above, the court concludes that Hanover's claims in the New York action do not arise out of the "same transaction or occurrence" involved in the Texas Action, and therefore, are not barred by res judicata as compulsory counterclaims.[3] Accordingly, the court denies Polyval's motion to dismiss Hanover's complaint under res judicata.

Nonetheless, even though the court concludes that Hanover's complaint should not be dismissed in its entirety, the court finds that res judicata does bar Hanover from relitigating the amounts due under the thirteen invoices in dispute in the Texas Action. Specifically, turning to the express terms of the Agreed Final Judgment in the Texas Action, Hanover and Polyval's assignee, EDC, stipulated that Hanover's "defenses in [the Texas Action], including its affirmative defenses, relate to and encompass only the [thirteen invoices] issued between August 2, 2018, and November 30, 2018." (Agreed Final Judgment at 3.) To

---

[3]   Although the court acknowledges that some facts in both suits may overlap, the court concludes -- after review of the complaints in each case and the documents to which the court may properly take judicial notice from the Texas Action -- that the facts in the Texas Action are not "significantly and logically relevant" to the "essential facts" in the New York suit because Hanover's case in New York involves an allegation of a product defect where the Texas Action solely involved a dispute over the nonpayment of thirteen invoices. *Rahlek, Ltd. v. Wells*, 587 S.W.3d 57, 74 (Tex. App. 2019); *see cf. Mack v. Midland Credit Mgmt., Inc.*, 2015 WL 1383760, at * 4 (E.D. Tex. Mar. 23, 2015) (finding that res judicata did not bar subsequent breach of contract suit for underlying debt in state court in FDCPA case). Moreover, as explained above, the court concludes that the two actions involve separate and distinct transactions, different forms of relief, and separate time periods.

permit Hanover to now relitigate those thirteen invoices would violate the broad principles of preclusion under Texas law in preventing duplicative litigation and double recovery.  *See McNeil Interests, Inc. v. Quisenberry*, 407 S.W.3d 381, 387 (Tex. App. 2013) ("The public policy underlying the doctrine of res judicata could not be more clear in Texas jurisprudence. As a subset of the broad principles of issue and claim preclusion, res judicata brings litigation to an end, prevents vexatious litigation, maintains the stability of court decisions, promotes judicial economy, and prevents double recovery.").  Thus, to the extent Hanover seeks recovery (or setoff) for the thirteen invoices in dispute in the Texas Action, those claims are precluded under res judicata and dismissed with prejudice.

## II.  Damage to Reputation Claim

Hanover's second cause of action asserts that Polyval's conduct in failing in multiple orders to deliver suitable binder "harmed Hanover's longstanding relationships with its customers and its reputation generally."  (Compl. ¶ 25.)  Hanover alleges that it "has long enjoyed a reputation for installing first-rate poured in place surfacing to municipalities, parks, recreation centers, and educational facilities" and likewise has "long-standing business relationships with its customers."  (*Id.* ¶ 23.)  In moving to dismiss Hanover's damage to reputation claim, Polyval argues

that Hanover's claim is barred by New York's economic loss rule. (Def. Mem. at 21-22.)

In general, damages to reputation "are not recoverable in a breach of contract action under New York law." *Ainbinder v. Money Ctr. Fin. Grp., Inc.*, No. 10-cv-5270 (SJF) (AKT), 2013 WL 1335997, at *10 (E.D.N.Y. Feb. 28, 2013), *report and recommendation adopted*, No. 10-cv-5270 (SJF) (AKT), 2013 WL 1335893 (E.D.N.Y. Mar. 25, 2013). Nonetheless, there is a limited exception in "exceptional cases" where the plaintiff can prove "specific business opportunities lost as a result of its diminished reputation." *Smith v. Positive Prods.*, 419 F. Supp. 2d 437, 453 (S.D.N.Y. 2005); *see Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 55 (2d Cir. 2015).

Here, Hanover alleges that Polyval damaged "Hanover's reputation and business relationships" by "failing to deliver the agreed-upon 'binder' for the quality and functionality in the PIP surfacing," and by "failing to respond to the questions concerning the integrity of the 'binder' being sold to Hanover." (Compl. ¶¶ 25, 26.) Hanover alleges that it will suffer damages to its reputation because its "customers have threatened legal action against Hanover, and have threatened to make complaints to the media," which will result in damages "in no event less than $10,000,000, plus interest." (*Id.* ¶¶ 27-28.) In light of the facts alleged and the foregoing case law recognizing

"exceptional cases" where reputational harm may be recovered, *see Smith*, 419 F. Supp. 2d at 453, the court declines to dismiss Hanover's damage to reputation claim at this early stage in the litigation.  Nevertheless, the court notes that Hanover will be required to prove the reputational damages it seeks or face dismissal.  *See Saxton Commc'n. Grp. v. Valassis Inserts, Inc.*, 1995 WL 679256, at *2 (S.D.N.Y. Nov. 15, 1995) ("Absent specific proof, damages for loss of reputation are too speculative to be recovered under contract law."); *AmTrust N. Am., Inc. v. KF&B, Inc.*, No. 17-cv-5340 (LJL), 2020 WL 5503479, at *2 (S.D.N.Y. Sept. 11, 2020) (granting summary judgment and dismissing claim for reputational damages where plaintiffs identified no evidence showing any reputational harm); *I.R.V. Merch. Corp. v. Jay Ward Prods., Inc.*, 856 F. Supp. 168, 175 (S.D.N.Y. 1994) (granting summary judgment and dismissing claim for reputational damages where plaintiff had "not enumerated any specific harms arising from the alleged loss of reputation").  Accordingly, for the reasons set forth above, the court denies defendant's motion to dismiss plaintiff's damage to reputation claim at this time.[4]

## III.   Unjust Enrichment

Hanover's fifth cause of action alleges that Hanover "conferred a benefit upon Polyval" in the form of payments and

---

[4]     In light of the limited exception for reputational harm under New York contract law discussed above, the court declines to conclude that plaintiff's damage to reputation claim violates New York's economic loss rule.

Polyval "retained that benefit under circumstances that make it unjust and inequitable for Polyval to retain it without paying Hanover the value thereof plus damages resulting from its use." (Compl. ¶¶ 48-50.)  Polyval argue that Hanover's unjust enrichment claim is duplicative of Hanover's breach of contract claim, and should therefore be dismissed.  (Def. Mem. at 22-23.) Hanover argues that it is permitted to assert a claim for unjust enrichment in the alternative to its breach of contract claim to the extent that Polyval disputes the existence of a contract. (Pl. Mem. at 18.)

"Under New York law, a plaintiff may prevail on a claim for unjust enrichment by demonstrating '(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009) (quoting *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)).  "New York permits the alternative pleading of breach of contract and unjust enrichment claims -- and the survival of both claims at the motion to dismiss stage -- where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue." *Sikarevich Fam. L.P. v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 166, 172 (E.D.N.Y. 2014).

Here, Hanover's unjust enrichment claim duplicates its breach of contract claim and cannot be pled in the alternative because the parties do not appear to dispute the existence of a contract, or contend that the contract is invalid or unenforceable. *See, e.g.*, *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009) (dismissing unjust enrichment claim where plaintiff did not contend that the contract was "not valid and enforceable"); *Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 916 F. Supp. 2d 357, 367 (W.D.N.Y. 2013) (dismissing unjust enrichment claim where defendant did not dispute validity of contract in its briefing supporting its motion to dismiss); (*see generally* Def. Mem. at 22-23 (not disputing validity of contract); Def. Reply Mem. at 10 (same)). Accordingly, based on the current record, because it does not appear that there is a bona fide dispute over the validity of the parties' contract, the court dismisses plaintiff's unjust enrichment claim without prejudice, as duplicative of its breach of contract claim. *See, e.g.*, *Remede Consulting Grp. Inc. v. Hamer*, No. 19-cv-3950 (NGG)(VMS), 2021 WL 430898, at *5 (E.D.N.Y. Feb. 8, 2021) (dismissing unjust enrichment claim as duplicative of breach of contract claim); *Giugliano v. FS2 Cap. Partners, LLC*, No. 14-cv-7240 (ADS) (GRB), 2015 WL 5124796, at *17 (E.D.N.Y. Sept. 1, 2015) (same). If defendant raises a dispute in its answer regarding the existence

and validity of a contract, plaintiff will be granted leave to amend as set forth below.

## IV.   Leave to Amend the Complaint

Hanover seeks leave to amend its complaint in the event that this court dismisses any part of the complaint.  (Pl. Mem. at 18-19.)  Polyval does not oppose Hanover's request to amend the complaint in its reply memorandum of law.  (*See generally* Def. Reply Mem.)

District courts "ha[ve] broad discretion in determining whether to grant leave to amend," *Gurary v. Winehouse*, 235 F.3d 793, 801 (2d Cir. 2000), and "leave to amend should be freely granted when 'justice so requires.'"  *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a)).  "This permissive standard is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits."  *Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (citation omitted).  "[T]he court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  But leave should be denied if repleading would be "futile."  *Id.*  Here, the court denies plaintiff leave to amend plaintiff's unjust enrichment claim without prejudice because it does not appear that there is a bona fide dispute

over the validity of the parties' contract.  In the event

defendant disputes the existence of a valid contract, plaintiff

will be afforded leave to amend the complaint to properly

replead its unjust enrichment claim in the alternative.

**CONCLUSION**

For the foregoing reasons, defendant's motion to

dismiss is granted in part and denied in part.  Defendant must

respond to the complaint within the time period required by the

Federal Rules of Civil Procedure.

SO ORDERED.


_____/s/_____

KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York


Dated: March 15, 2021
      Brooklyn, New York