UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HANOVER SPECIALTIES, INC. D/B/A VITRITURF,

                                        Plaintiff,

-against-

LES REVÊTEMENTS POLYVAL INC., d/b/a POLYVAL COATINGS INC.,

                                        Defendants.

19-cv-03732 (KAM)(CLP)

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR DISCOVERY SANCTIONS

                                              HOGUET NEWMAN
                                                 REGAL & KENNEY, LLP
                                            One Grand Central Place
                                            60 E. 42nd Street, 48th Floor
                                            New York, New York 10165
                                            (212) 689-8808

December 1, 2022

**TABLE OF AUTHORITIES**

INTRODUCTION ................................................................................................................... 1

HANOVER'S SUPPLEMENTAL PRODUCTION ................................................................ 2

ARGUMENT ........................................................................................................................... 5

   I.   HANOVER'S WILLFUL AND PERSISTING VIOLATIONS OF THE COURT'S DISCOVERY ORDERS WARRANT THE SANCTION OF DISMISSAL ....................... 5

   II.   IN THE ALTERNATIVE, THE COURT SHOULD IMPOSE AN ADVERSE INFERENCE ON HANOVER AND SHOULD PRECLUDE IT FROM RELYING ON ANY EVIDENCE OF DAMAGES THAT IT HAS YET TO PRODUCE ......................... 6

   III.   IN ADDITION TO ANY OTHER SANCTIONS IMPOSED BY THE COURT, POLYVAL IS ENTITLED TO AN AWARD OF ITS LEGAL FEES AND COSTS ....... 7

CONCLUSION ........................................................................................................................ 8

Defendant Les Revêtements Polyval, Inc. ("Defendant" or "Polyval"), respectfully submits this Reply Memorandum of Law, together with the Reply Declaration of Bradley J. Nash ("Nash Reply Decl."), in further support of its motion for discovery sanctions, pursuant to Rule 37 of the Federal Rules of Civil Procedure.

## INTRODUCTION

In its opposition to Polyval's sanctions motion, Hanover concedes that for many months it failed to provide discovery responses "when ordered by the Court or in compliance with the Federal Rules," and that the Court "may find" this "way too-long delay" in complying with discovery obligations "was willful." Hanover Mem. at 6. Indeed, Hanover ignored a court-ordered deadline for completing its production, even in the face of the Court's clear warning that further non-compliance could result in the dismissal of its claims. Yet despite these uncontested facts, Hanover contends that a document dump it produced one month after Polyval filed its sanctions motion somehow immunizes it from any sanctions under Rule 37. This is not the law.

Even if Hanover's belated production did resolve all the discovery deficiencies, controlling authority from the Second Circuit and the United States Supreme Court has "consistently rejected the 'no harm no foul' standard for evaluating discovery sanctions." *Mintz Fraade Law Firm, P.C. v. Brady*, 2021 WL 621206, at *6 (S.D.N.Y. Feb. 17, 2021). Where a party's discovery misconduct is extensive and ongoing, Courts have not hesitated to grant sanctions, including dismissal of a plaintiff's claims—particularly where, as here, the Court has warned the non-compliant party of the consequences of further disregard of the court's discovery orders.

Moreover, Hanover's contention that it has now "provided all of the outstanding documents and information," Hanover Mem. at 1, is wrong. As shown below, a review of

Hanover's supplemental production reveals that significant and fundamental gaps remain, including (1) a proper calculation of Hanover's alleged repair costs, with supporting documentation; (2) any support or tabulation of alleged consequential damages; and (3) documents or sworn interrogatory responses showing which lot numbers of Polyval's binder were used at which sites. These ongoing deficiencies confirm what has long been clear: Hanover simply does not take its discovery obligations in this case seriously.

Although the sanction of dismissal is warranted on these facts, at a minimum, Hanover should be precluded from introducing or relying on any damages evidence that it has yet to produce, and the Court should impose an adverse inference based on Hanover's failure to identify the specific binder lot numbers it used at each site. Finally, in addition to any other sanctions the Court imposes, Polyval is entitled to recover from Hanover the costs it incurred on this motion.

## HANOVER'S SUPPLEMENTAL PRODUCTION

On November 14, 2022—more than a year after Polyval served its discovery requests, nearly four months after the Court ordered Hanover to make a complete production within 45 days, on pain of dismissal, and one month after Polyval filed its sanctions motion—Hanover finally produced supplemental interrogatory responses and an accompanying document production.

Although the volume of Hanover's belated supplemental production was larger than its previous deficient discovery responses, it has still failed to provide complete discovery on critical issues in the case.

*First*, Hanover claims that its damages include repair costs it has incurred for projects where it used Polyval's allegedly defective binder. Hanover Mem. at 3 ("Hanover has already

2

repaired jobs where this latent defect has emerged with costs exceeding two hundred thousand dollars."). Exhibit B to Hanover's supplemental interrogatory responses, Nash Reply Decl., Ex. M, purports to identify some 46 sites that have experienced such failures, and indicates, in column 9, the alleged damages incurred for each site. Column 10 purports to confirm that there are "documents showing damages," but the column merely indicates "Yes" without cross-referencing the supporting documentation by Bates number. Polyval's time-consuming review of Hanover's production reveals that in most instances, the "damages" number indicated in column nine actually represents Hanover's material and labor costs for its original installation, and has nothing whatsoever to do with any alleged "repair" costs that would have incurred at a later date.

To choose one such example, for Job Number H-5583 (Friendship Park Carlsbad, NM), Exhibit B to Hanover's supplemental interrogatory response indicates a date of installation of 10/15/2017, a date of repair of 10/11/2018, and damages in the amount of $72,126.80. *Id.* However, the supporting documentation buried in Hanover's 2,000-page production shows that the $72,126.80 damages figure is, in fact, the sum of Hanover's "Total Job Costs" (materials and labor) for the original installation at this site in October 2017. *See* Nash Reply Decl., Ex. N at 2 (printout of costs for Job No. H-5583). Those installation costs cannot possibly be Hanover's damages, as Hanover was paid by customer for those costs—and at a mark-up. *See id.* at 1 (invoice to customer for initial installation). Thus, Hanover's alleged repairs costs for this installation are not, in fact, itemized in the interrogatory responses and are not supported by any documentation in Hanover's document production. This is just one example of many, which reveal that Hanover's supplemental production still fails to support its alleged damages.

3

*Second*, Hanover's complaint also alleges that Hanover incurred consequential damages in the form of harm to "Hanover's longstanding relationships with its customers and its reputation generally." Nash Decl., Ex. H (Hanover Compl.) ¶ 25. In its opposition to Polyval's motion to dismiss, filed on June 17, 2020, Hanover represented that it could add to the complaint "information regarding projects it lost because of the damage to its reputation." Dkt. 23 (Pl. Mem. in Opp'n to Mot. To Dismiss) at 19. Yet no such damages are tabulated in the interrogatory responses, nor were any supporting documents produced.

*Third*, Hanover has failed to identify the specific production lot numbers for the binder used at each job site. This information is critical to Polyval's defense because Hanover has conceded that Polyval's binder exhibited no defects on many projects. If binder from the same production lot number was used at multiple sites, some of which experienced no failures, this would demonstrate that any failures had another cause (such as errors in the installation). But Exhibit B merely correlates each installation to a Polyval invoice number, each of which involves shipments of product from multiple lot numbers. And because the interrogatory responses often connect the same Polyval invoice number to multiple installations, it is impossible to determine which specific product was used at each site. By obscuring this information, Hanover is frustrating Polyval's defense of the claims.

*Finally*, other categories of documents in the production may be incomplete, as well. For example, Hanover has produced correspondence with some, but not all, of the customers it alleges experienced failures. Nor does the production contain photographs or other records of the alleged damage at each of the sites identified in the interrogatories.

4

## ARGUMENT

I. **HANOVER'S WILLFUL AND PERSISTING VIOLATIONS OF THE COURT'S DISCOVERY ORDERS WARRANT THE SANCTION OF DISMISSAL**

Hanover's pattern of willful non-compliance—which began more than a year ago, continued for almost four months in the face of a clear order of this Court warning it of the consequences, and which persists even now—warrants the sanction of dismissal.[1] *See Martinez v. City of New York*, 2018 WL 604019, at *22 (E.D.N.Y. Jan. 24, 2018) (Pollak, J.) ("harshness of [a dismissal order] is justified if the district court finds that the failure to comply with discovery orders was due to willfulness, bad faith, or any fault of the party sanctioned"). Indeed, as this Court has recognized, "[p]eriods of non-compliance as brief as a few months"—less than Hanover exhibited here—"have been held to weigh in favor of dispositive sanctions." *Id.*, at *28; *accord Embuscado v. DC Comics*, 347 Fed. App'x 700, 700–01 (2d Cir. 2009) (affirming terminating sanctions based on three months of noncompliance).

Hanover does not meaningfully dispute that its conduct in repeatedly ignoring discovery deadlines under the Federal Rules and this Court's orders was willful. Further, Hanover's suggestion that it has now resolved all the discovery deficiencies is incorrect, and in any event, irrelevant, as the Second Circuit and the Supreme Court have unambiguously rejected the "no harm, no foul" defense to discovery sanctions. Nor can Hanover claim any unfair surprise, as it was expressly warned by the Court on July 25 that further noncompliance could result in a recommendation to dismiss the complaint.

---

[1] Polyval's motion shows that Hanover's pattern of discovery abuse extends back to the related Texas litigation, where Hanover similarly ignored court-ordered deadlines and withheld discovery on its alleged damages. Of course, Polyval does not suggest that this Court should impose sanctions for Hanover's "actions . . . in a different case in a different court." Hanover Mem. at 6 n.2. Rather, Hanover's pattern of conduct pre-dating this litigation tends to show that its withholding of discovery is willful and not merely the result of circumstances beyond its control.

5

The cases Hanover cites where Courts have spared non-compliant parties from the harshest sanctions are distinguishable. In *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 319 F.R.D. 122, 129 (S.D.N.Y. 2016) (cited in Hanover Mem. at 8), for example, the plaintiff did not willfully refuse to provide discovery in the face of a court order. Rather, it did not have the requested documents, as it apparently "took assignment of the claims without acquiring the rights to access the information it might need to litigate them." *Id.* Here, by contrast, Hanover deliberately withheld (and apparently continues to withhold) information in its possession, in violation of its obligations under the Federal Rules and this Court's express orders. In *Ali v. Dainese USA, Inc.*, 577 F. Supp. 3d 205 (S.D.N.Y. 2021) (cited in Hanover Mem. at 8), the court relied on the fact that it had "never explicitly warned Plaintiff that her case could be dismissed." *Id.* at 223. Of course, that is not the case here.

For these reasons, the Court should order the dismissal of Hanover's complaint with prejudice.

## II. IN THE ALTERNATIVE, THE COURT SHOULD IMPOSE AN ADVERSE INFERENCE ON HANOVER AND SHOULD PRECLUDE IT FROM RELYING ON ANY EVIDENCE OF DAMAGES THAT IT HAS YET TO PRODUCE

Should the Court permit any portion of Hanover's case to proceed, at a minimum, Hanover's proof should be limited to the discovery it has (belatedly) provided to date. This was the result in *Thompson v. Jamaica Hosp. Med. Ctr.*, 2015 WL 3824254, at *3 (S.D.N.Y. June 19, 2015), a case on which Hanover relies in its brief (at 6). In that case, the court declined to dismiss the non-compliant plaintiff's damages claims outright, but nevertheless ordered that he was "precluded from offering any documents not yet produced in discovery as evidence of damages against the [] Defendants." In addition, Polyval is entitled to an adverse inference at trial that the information Hanover continues to withhold concerning the specific binder lot numbers used at each location would tend to disprove Plaintiff's product defect claim. In

6

another case cited by Hanover, *Mintz Fraade*, 2021 WL 621206, at *6-7, the Court, despite declining to dismiss the plaintiff's complaint, did issue an order precluding certain evidence and imposing adverse inferences on the plaintiff. *See Mintz Fraade L. Firm, P.C. v. Brady*, 2021 WL 1759003, at *4 (S.D.N.Y. May 4, 2021).

### III. IN ADDITION TO ANY OTHER SANCTIONS IMPOSED BY THE COURT, POLYVAL IS ENTITLED TO AN AWARD OF ITS LEGAL FEES AND COSTS

Finally, there can be no dispute that Polyval is entitled to an award of the attorneys' fees and costs it incurred in bringing this motion. Even if Hanover's production were now complete—which it is not—its supplemental production was not made until a month after Polyval moved for sanctions. Under Rule 37, fee shifting is mandatory in this context. *See* Fed. R. Civ. P. 37(b)(2)(C) ("the court *must* order the disobedient party . . . to pay the reasonable expenses, including attorneys' fees, cause by the failure" to obey an order to provide or permit discovery) (emphasis added).

Accordingly, in addition to any other sanctions the Court imposes, Hanover should be ordered to pay all fees and other costs Polyval has incurred or will incur in connection with this motion.

## CONCLUSION

For the reasons stated above, and in Polyval's opening papers, Defendant's motion for sanctions should be granted.

Dated: December 1, 2022
      New York, New York

                                Respectfully submitted,

                                /s/ *Bradley J. Nash*
                              Bradley J. Nash
                              Shanene Frederick
                              Hoguet Newman Regal & Kenney, LLP
                              One Grand Central Place
                              60 East 42nd Street, 48th Floor
                              New York, NY 10016
                              Phone: 212-689-8808

                              *Attorneys for Defendant*